# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

ROBERT A. STIRES,

       Petitioner,

v.                                CASE NO:  8:07-CV-1689-T-30TBM

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

       Respondents.

_____/

## ORDER

       Petitioner, an inmate in the Florida penal system proceeding *pro se*, brings this petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 (Dkt. #1).  The Court has considered the petition, Respondents' response (Dkt. #8), Petitioner's reply (Dkt. #12), Respondent's supplemental response (Dkt. #17) and Petitioner's supplemental reply (Dkt. #23).  Upon review, the Court determines that the petition must be denied for the reasons discussed below.

## BACKGROUND

       Petitioner was charged by Information with two counts of DUI manslaughter and one count of DUI with personal bodily injury (Dkt. #20, Vol. II, Ex. B at 8-9). A jury returned guilty verdicts on all counts as charged (Dkt. #20, Vol. II, Ex. B at 121-123). Petitioner was sentenced to 15 years in prison on Count I, 15 years in prison followed by four years of probation on Count II to run consecutive to the sentence in Count I, and one year of

probation on Count III to run consecutive to the sentence in Count II (Dkt. #20, Vol. II, Ex. B at 158-167).

Petitioner appealed his conviction to the state appellate court (Dkt. #20, Vol. II, Ex. C). The appeal raised the following arguments:

1.    The court erred by allowing the state's blood toxicologist to testify to the effects one would expect the appellant's blood alcohol level to have on an average person.

2.    The court erred in instructing the jury on the causation element of DUI manslaughter.

On July 26, 2002 the Fifth District Court of Appeal issued an opinion affirming the judgments and sentences (Dkt. #20, Vol. II, Ex. F); *see Stires v. State*, 824 So. 2d 943 (Fla. 5th Dist. Ct. App. 2002) .

Petitioner then filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 raising twelve claims (Dkt. #20, Vol. III, Ex. J at 12-65). The claims asserted were:

1.    Illegal sentence on Count II exceeds statutory maximum for second degree felony;

2.    Ineffective assistance of counsel for interfering with defendant's right to testify;

3.    Ineffective assistance of counsel for failing to impeach key state witness with prior inconsistent statement;

4.        Ineffective assistance of counsel for failing to object to irrelevant and prejudicial photographic evidence;

5.        Ineffective assistance of counsel for failing to call exculpatory witness to testify at trial;

6.        Ineffective assistance of counsel for failing to investigate and present exculpatory evidence;

7.        Ineffective assistance of counsel for failing to object to inadmissible hearsay testimony;

8.        Ineffective assistance of counsel for representing defendant under conflict of interest;

9.        Ineffective assistance of counsel for failing to challenge juror misconduct;

10.      Ineffective assistance of counsel for failing to file motion to suppress petitioner's statement;

11.      Ineffective assistance of counsel for failing to challenge blood alcohol evidence;

12.      Cumulative error.

An evidentiary hearing was held on the motion for post-conviction relief and written closing arguments were taken. The motion was denied by the state court on August 24, 2004, except as to the illegal sentence with re-sentencing delayed until after a possible appeal (Dkt. #20, Vol. III, Ex. J at 284-299).

Petitioner appealed the denial of his post-conviction motion to the Fifth District Court of Appeal, filing an Initial Brief and a supplemental Initial Brief (Dkt. #20, Vol. IV, Ex. K and L). In total the Petitioner appealed five of the twelve issues argued in the lower court. These issues were:

1. The failure of trial counsel to impeach a key state witness with his prior inconsistent statement about whether he had been drinking;

2. The failure of trial counsel to call an exculpatory witness to testify at trial and impeach the prosecution's eyewitness;

3. The failure of trial counsel to challenge juror misconduct;

4. The failure of trial counsel to present evidence of the Petitioner's facial injuries to explain his slurred speech;

5. The failure of trial counsel to present exculpatory evidence that the other driver was not wearing corrective lenses.

Petitioner expressed his desire to appeal the additional issues beyond those raised in the Initial Brief and supplemental Initial Brief, and his counsel filed a motion seeking Leave to File *Pro Se* a Supplemental Brief (Dkt. #23, App. E), which was denied by the court (Dkt. #23, App. K). The Fifth District Court of Appeal affirmed the post-conviction court *per curiam* on April 25, 2006 (Dkt. #20, Vol. IV, Ex. O), *see Stires v. State*, 928 So. 2d 1238 (Fla. 5th Dist. Ct. App. 2006)[table].

On July 10, 2006, Petitioner filed a *pro se* motion to correct his sentence which was previously found to violate the law of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The

court on August 31, 2006, adjusted the Petitioner's sentence on Count II to 11 years in prison followed by 4 years of probation consecutive to Count I, leaving the remainder of the original sentence intact (Dkt. #20, Vol. IV, Ex. S).

On February 15, 2007 Petitioner filed a petition for writ of habeas corpus in the state appellate court, alleging that his appellate counsel provided ineffective assistance in both his direct appeal and the appeal of his post-conviction motions (Dkt. #20, Vol. IV, Ex. T). Petitioner alleged three deficiencies as to counsel's representation on direct appeal:

1.  Failure to argue that the State allowed false testimony to go uncorrected;

2.  Failure to file a motion to correct his sentence as illegal under *Apprendi*;

3.  Failure to seek discretionary review by the Florida Supreme Court or notify petitioner of the decision until after the time when Petitioner could file a *pro se* petition.

The two alleged faults with his appellate counsel's performance in the post-conviction motion were:

1.  Failure to raise issues which had been addressed by the lower court in its written decision where the decision was based on an unreasonable determination of the facts in light of evidence or contrary to the law;

2.  Failure to seek rehearing of the appellate court's decision or notify petitioner of the decision until after the time when Petitioner could file a *pro se* petition.

The petition was denied by the Fifth District Court of Appeal on April 19th, 2007 (Dkt. #20, Vol. IV, Ex. U).

The Petitioner then timely filed this §2254 petition (Dkt. #1) for habeas corpus relief on September 18, 2007, within the statutorily mandated one year which began to run when his 30 day window to appeal the August 31, 2006 re-sentencing closed. *Ferreira v. Sec'y, Dep't of Corr.*, 494 F.3d 1286, 1293 (11th Cir. 2007). The petition sets forth nineteen grounds for relief with grounds 1-11 alleging ineffective assistance of counsel, grounds 12-16 alleging ineffective assistance of appellate counsel, grounds 17 and 18 alleging trial court error, and ground 19 alleging illegal sentences.

## STANDARD OF REVIEW

Pursuant to the provisions of 28 U.S.C. § 2254(a), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") enacted and taking effect on April 24, 1996, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C § 2254(a). Under 28 U.S.C. § 2254(d) and (e) this Court is highly deferential to the factual findings of the state courts, granting them the presumption of correctness unless they are rebutted by "clear and convincing evidence." Similarly the state courts' application of law - including the resolution of constitutional issues - are to be accepted by this Court unless they are "contrary to" clearly established precedent of the United States Supreme Court or involve an "unreasonable application" of said precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). It is not sufficient for the Court to believe that the state courts were incorrect in their

application of federal law, the state court decision must be demonstrated to be "objectively unreasonable." *Id.* at 365.

**DISCUSSION**

Since the petitioner was convicted following the enactment of AEDPA, his petition is subject to the provisions thereof. Because the claims raised were initially considered by a state court, their review is governed by §2254(d). *See Mobley v. Head*, 267 F.3d 1312, 1316 (11th Cir. 2001).

**Ground One**

Petitioner asserts that he was denied effective assistance of trial counsel when his attorney "fail[ed] to impeach the credibility of a key state witness, Carl Benson, with a prior inconsistent statement he gave to Florida Highway Patrol Trooper Vinson Parnell that he had been drinking alcohol on the night of the crash" (Dkt. 1). There is no bar to hearing this claim, as Petitioner has exhausted his state court remedies by pursuing it in both his Rule 3.850 proceeding and his appeal.

This claim arises from the testimony of Carl Benson, the only surviving eyewitness to the crash aside from the Petitioner. Petitioner argues that since Mr. Benson was the only witness to see who had the right of way, his testimony regarding whether or not he (Benson) had been drinking earlier in the evening should have been impeached. Mr. Benson testified that at the time of the crash the car containing the three girls, two of whom were killed, had been stopped at a traffic signal going northbound and began to make a left turn. The light had changed to give the girls and Mr. Benson, who was driving southbound, the green light.

Mr. Benson said that he remembered this because he was surprised the light was green since the traffic signal was "always red" (Dkt. #20, Vol. I, Ex. A at 397). He testified that as the girls began their turn, they had a green signal, and the Petitioner ran the red light and struck their vehicle in the intersection.

This was a critical issue at trial since the Petitioner had admitted consuming three or four beers earlier in the evening and as such based his defense on contesting the cause element of DUI manslaughter, arguing that he had the right of way and as such was not responsible for the crash and had not caused the girls' deaths. The testimony of the crash investigator and a traffic control engineer about the nature of the crash and the operation of the traffic signal supported Mr. Benson's account of the events.

The United States Supreme Court has clearly established that in order to make a prima facie claim for ineffective assistance of counsel, the Petitioner must show not only that counsel's performance was deficient, but also that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A performance is not deficient unless it is objectively unreasonable under prevailing professional norms. *Id.* at 688. Prejudice has occurred when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Eleventh Circuit has phrased the standard as "[T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000)(en banc)(quoting *Burger v. Kemp*, 483 U.S. 776 (1987)). The defendant is also forced to "overcome the presumption that, under the

circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689.

The state court applied the *Strickland* standard in reaching the decision to reject petitioner's ineffective assistance of counsel claims on the merits. As such, in order to show that he is entitled to relief Petitioner must establish that the *Strickland* standard was applied unreasonably by the state court in determining that his Rule 3.850 motions lacked merit. *Williams v. Taylor*, 529 U.S. 362 (2000).

In ruling on this issue during the course of Petitioner's Rule 3.850 hearing the post-conviction court noted that, during Trooper Parnell's cross-examination, questions about his mention of Mr. Benson drinking "[were] anticipatorily objected to by the State. A side bar conference ensued, after which the defense team then, upon consultation, withdrew this inquiry" (Dkt. #20, Vol. III, Ex. J at 287-288). The trial transcript confirms that this did in fact occur. (Dkt. #20, Vol. II, Ex. A at 677-683).

Given that the defense after consulting decided not to pursue this line of questioning, the state court held that "such a decision by its very nature has to involve some aspects of trial strategy" (Dkt. #20, Vol. III, Ex. J at 288) and as such did not find the defense counsel deficient for not proceeding with the issue. Further, especially in light of the ambiguous and uncertain nature of Mr. Benson's testimony, the state court found that it was "impossible as a matter of law for the Court to find that such a failure provided a reasonable probability that the jury outcome would have been different" (Dkt. #20, Vol. III, Ex. J at 288). This is a direct application of the *Strickland* test where, in order to show prejudice, "[t]he defendant must

show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 693 (1984).

The petitioner has failed to show that the state court's decision was contrary to or an unreasonable application of federal law as enunciated in *Strickland*, 466 U.S. 687 or based upon an unreasonable determination of the facts in light of the evidence. See 28 U.S.C. 2254(d). The Court determines that the petitioner is not entitled to relief on the claims presented in Ground One.

**Ground Two**

Petitioner asserts that he was denied effective assistance of trial counsel when his attorney "fail[ed] to call three exculpatory witnesses, Jennifer Fitts, Phillip Springer, and Paula Pettruci to testify at trial." (Dkt. 1).

Only the issue of failing to call Jennifer Fitts has been exhausted at the state court level. The Initial Brief appealing the decision on the Rule 3.850 proceeding raises only the failure to call Jennifer Fitts (Dkt. #20, Vol. IV, Ex. K). Neither the supplemental Initial Brief nor the Supplemental Brief which the Petitioner attempted to file *pro se* raised the failure to call Mr. Springer or Ms. Petrucci for appellate review (Dkt. #20, Vol. IV, Ex. K and Dkt. #23, App. E).

Section 2254(c) requires the petitioner to exhaust his state claims before proceeding to federal court, and the Supreme Court has held that this requires "prisoners [to] give the

state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Petitioner has procedurally defaulted the portions of this claim dealing with Mr. Springer and Ms. Petrucci by not raising them for appellate review unless he can show both "cause" and "prejudice" or that he is actually innocent. *Bousley v. United States*, 523 U.S. 614, 622 (1998). To show "cause" the petitioner must show "some external impediment preventing counsel from constructing or raising the claim." *Lynn v. United States*, 365 F.3d 1225, 1233 (2004). The plaintiff has failed to show either cause and prejudice or his actual innocence, so the claim as it relates to Springer and Petrucci is procedurally defaulted and only counsel's failure to call Ms. Fitts will be considered.

The Petitioner contends that Ms. Fitts would have been able to provide testimony that Jennifer Smith, the surviving victim, told her that the girls were worried about falling asleep, it was her job to keep the driver awake, and she had fallen asleep. Ms. Fitts testified at the evidentiary hearing for the Petitioner's post-conviction motions in which she stated that Ms. Smith was asleep at the time of the crash (Dkt. #20, Vol. IV, Ex. J at 464). Ms. Fitts would have testified that the girls were tired and Ms. Smith had fallen asleep. She would have also testified that she had served Mr. Benson several beers earlier that evening between 6 and 7:30 PM, but that he had not returned to the bar where she worked until he ran in to report the accident (Dkt. #20, Vol. III, Ex. J at 290). The crash occurred between midnight and 1:00 AM. The post-conviction court, while deciding the Rule 3.850 motions, determined that it had been the strategy of the defense "to argue that the Defendant had the right of way at the

intersection, and otherwise to keep the case simple and straightforward, without presenting unnecessary witnesses (other than possibly the Defendant himself), so as to preserve beginning and ending closing argument" (Dkt. #20, Vol. III, Ex. J at 290).

The state court determined that maintenance of the dual closing argument is a reasonable trial strategy and as such did not represent unreasonably deficient performance by counsel. This Court agrees. "'We cannot, and will not, second guess' the 'strategic decisions trial counsel are called upon to make.'" *Keeley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1353 (11th Cir. 2004)(quoting *Waters v. Thomas*, 46 F.3d 1506, 1518-19 (11th Cir. 1995)(en banc)). Further, the Petitioner has failed to show that the state court's determination that the testimony of Ms. Fitts would not have "by any reasonable probability, change[d] the outcome of the proceeding" (Dkt. #20, Vol. III, Ex. J at 290-291) was based on an unreasonable determination of the facts in light of the evidence. If Ms. Smith was asleep at the time of the crash, she wouldn't have been able to tell Ms. Fitts that the driver was asleep. The petitioner is not entitled to relief on the claims presented in Ground Two.

**Ground Three**

Petitioner argues that his trial counsel's "fail[ure] to challenge the misconduct of the jury foreperson, Laura Manuel" denied him effective assistance of counsel (Dkt. #1). This claim was exhausted in the state courts since it was tried both in his Rule 3.850 motions and his appeal of the Rule 3.850 motions.

Petitioner claims that his sister attended high school with Ms. Manuel and later worked for Ms. Manuel's husband during which times there were ill-feelings between the

two. He also claims that Ms. Manuel prematurely discussed the case at lunch during the trial. At trial the defense team filed a post-trial motion, but this motion was later dropped. The record indicates that there was no further evidence forthcoming to counsel regarding the alleged ill will between Petitioner's sister and Ms. Manuel and that an investigation into the alleged premature discussion found that the supposed witnesses could not confirm the discussion ever taking place. In the words of the state court in the 3.850 hearing, after investigating the matter, "[t]he Defendant could not meet this burden" of "substantial proof before ... extrinsic evidence can be used to pry into the ... jury proceedings" (Dkt. #20, Vol. III, Ex. J at 295) and as such was not unreasonable in abandoning the motion. The petitioner has failed to show that the state court's decision was contrary to or an unreasonable application of federal law as enunciated in *Strickland*, 466 U.S. 687 or based on an unreasonable determination of the facts in light of the evidence. See 28 U.S.C. 2254(d). Ground Three fails.

**Ground Four**

Petitioner claims that he was denied effective assistance of counsel when his trial counsel "fail[ed] to investigate and present exculpatory evidence" (Dkt. #1). He refers to the exculpatory evidence which should have been investigated and presented as being a surveillance video tape of the crash scene which would show who had the green light and evidence of the facial injuries he suffered which may explain his slurred speech following the accident.

The state claims that this ground was never fully exhausted and as such is procedurally barred, a claim to which Petitioner strongly objects. A review of the record shows that the issue of failing to investigate the Petitioner's facial injuries was raised in the Petitioner's supplemental Initial Brief (Dkt. #20, Vol. IV, Ex. L) for the appeal of his Rule 3.850 proceedings and has been exhausted, but his claims regarding the alleged surveillance tape were not raised in the briefings on the appeal or in the *pro se* supplemental brief which the Petitioner attempted to file (Dkt. #23, App. E) and as such the claim is procedurally barred as it relates to the alleged surveillance tape.

Even were the claim not procedurally barred with regards to the surveillance footage, that claim would fail on its face. The Petitioner bore the burden of introducing evidence in the state court Rule 3.850 hearing that would have shown that the evidence in question actually existed and what it would have indicated. The defendant did not do so, and, in the words of the state court judge, gave "no indication that any such video tape actually existed, or that such video tape would have been helpful in any way to the Defendant" (Dkt. #20, Vol. III, Ex. J at 291) .

As to the portion of the claim which is not procedurally barred, the post-conviction court found that the public defender's failure to present evidence of the Petitioner's facial injuries did not constitute ineffective assistance of counsel. Defense counsel deposed witnesses at the hospital and obtained various discovery materials including the Petitioner's medical records. The witnesses would have described the Petitioner as being obnoxious, mean, and angry, which contributed to defense counsel's decision not to call them.

Additionally, the introduction of the medical records would have required calling witnesses to authenticate them and would have cost the defense the opportunity to present the first and last closing arguments. This was a strategic decision by the trial counsel after investigating what the evidence would show which this Court is unwilling to second-guess. The Court finds nothing unreasonable with the state court's findings of facts or application of the law, and as such concludes that the Petitioner is not entitled to relief on the claim presented in Ground Four.

**Ground Five**

Petitioner claims that his trial counsel provided ineffective assistance by "interfering with [his] right to testify at trial" (Dkt. #1). Respondent asserts that this claim is procedurally barred as unexhausted since it was not raised in the Petitioner's appeal of the decision on his 3.850 motions.

The claim in Ground Five has been exhausted in the state court system. Petitioner urged his counsel in the appeal of his post-conviction motions to raise all of the issues which he had presented in the Rule 3.850 hearing. His counsel declined to do so, but sought leave for the Petitioner to file a *pro se* supplemental brief (Dkt. #23, App. E) and attached to the motion the additional arguments which petitioner sought to file. The issue in Ground Five was raised in the proposed *pro se* supplement. The Court denied the motion for leave to file a *pro se* supplemental brief. Petitioner later filed a state habeas corpus petition (Dkt. #20, Vol. IV, Ex. T) alleging, amongst other claims, that his appellate counsel was ineffective for failing to raise the issues on which the court had issued written opinion in his 3.850 hearing.

While this state habeas petition was somewhat vague, it does say elsewhere in the petition that the Petitioner advised his counsel that "she should file arguments on all the claims raised on appeal in his motion as the lower court had provided its ruling on all the claims raised" (Dkt. #20, Vol. IV, Ex. T) . When construed liberally as *pro se* filings should be, *see Tannenbaum v. United States*, 148 F.3d 1262 (11th Cir. 1998), Petitioner's state habeas corpus petition to the Fifth District Court of Appeal arguing that his attorney should have pursued all his claims, along with the Petitioner's proposed supplemental brief which the court was presented with but declined to accept, were sufficient to bring the issue before the state appellate court. *See generally Ogle v. Johnson*, 488 F.3d 1364 (11th Cir. 2007). As such, the state remedies were exhausted.

The state court reviewed the record and obtained testimony from both the Petitioner and his trial counsel before finding the Petitioner's testimony less compelling and trustworthy than counsel's denial of telling Petitioner that testifying would cause him to lose the final closing argument. Further, evidence was presented which suggested that the Petitioner would not make a favorable impression through his testimony and that the information which the Petitioner would have testified to had already been placed before the jury. Finally the state court found that the record indicated the Petitioner was involved in the decision not to testify, and he made this decision freely and voluntarily (Dkt. #20, Vol. III, Ex. J at 286).

The state post-conviction court's determination that this was a strategic decision in which the Petitioner participated cannot be found unreasonable by this Court when the

Petitioner "has not put forth any evidence, much less clear and convincing evidence, to rebut the state courts' determinations" but instead merely repeated the allegations presented to the state court. *Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 938 (11th Cir. 2009). "'The question of whether an attorney's actions were actually the product of a tactical or strategic decision is an issue of fact, and a state court's decision concerning that issue is presumptively correct.'" *Id.* (quoting *Provenzano v. Singletary*, 148 F.3d 1327, 1330 (11th Cir.1998)). The Petitioner is not entitled to relief on the claim presented in Ground Five.

**Ground Six**

Petitioner claims that his trial counsel was "ineffective for failing to object to irrelevant and highly prejudicial photograph and video evidence of the deceased victims from the crime scene and subsequent autopsy" (Dkt. #1). For the reasons discussed in Ground Five, this issue was also exhausted before the state courts as it appears in the proposed *pro se* supplemental brief and was one of the grounds Petitioner alleges his appellate counsel was ineffective for failing to raise.

In considering this claim, the state post-conviction court found that the photographs in question were stipulated into evidence after being reviewed by the defense team and consultation between the Petitioner and his counsel. Further, the post-conviction court determined that the pictures in question were selected from a multitude of available photographic evidence as being those suitable to both sides, being relevant to the issues the state hoped to show and not appearing unduly prejudicial in nature to the defense team.

The post-conviction court did not find the pictures in question to be particularly inappropriate and concluded that neither prong of *Strickland* had been met on the issue of whether allowing the photographs constituted ineffective assistance of counsel (Dkt. #20, Vol. III, Ex. J at 289). Petitioner has presented nothing to this court which would show that the determination by the state court was unreasonable. Even looking to the *pro se* supplement which Petitioner sought to file with the state appellate court, the only argument presented was state case law discussing the admissibility of autopsy photographs in various fact patterns under Florida law (Dkt. #23, App. E).

The factual findings of the court were clear that the nature of the photographs was not sufficient that it would be objectively unreasonable for an attorney to allow them into evidence. Petitioner has presented no evidence beyond that considered by the state court to suggest that by failing to object to the photographs his counsel committed an "error [which] so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). The petitioner is not entitled to relief on the claim presented in Ground Six.

**Ground Seven**

Petitioner asserts that he was denied effective assistance of counsel by his trial counsel's "fail[ure] to object to the inadmissible hearsay statement of Chelsea Druzbik that prior to the accident, she would stay awake to make sure the driver, Danielle Werner, did not fall asleep" (Dkt. #1).

This claim was not exhausted at the state court level and is therefore procedurally barred. Petitioner did not raise the issue before the state appellate court and as such has not "invok[ed] one complete round of the State's established appellate review process" as is required to exhaust his claim. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This issue does not appear in the Initial Brief, supplemental Initial Brief, or proposed *pro se* Supplemental Brief which were presented to the state appellate court and "it is not enough that [Petitioner], in his state habeas petition, attacked his postconviction counsel as inadequate for her failure to raise 'meritorious issues.'" *Ogle v. Johnson*, 488 F.3d 1364, 1368 (11th Cir. 2007). To exhaust this claim Petitioner would have had to put it before the state appellate court in a way "such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation." *Id.* (quoting *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005)).

Even were this claim not procedurally barred, Petitioner would not be entitled to relief. His claim revolves around his attorney's failure to object to the statement: "I remember Chelsea looked over at me and she said are you going to sleep, and I said, yeah, I'm pretty tired. And she said, okay, I'll stay up and I'll make sure Danielle's awake" (Dkt. #20, Vol. I, Ex. A at 387-388). In considering the event during the Rule 3.850 motions the state court described the testimony as "very minor and insignificant" as a part of the whole trial and the state did not make an issue of or feature this testimony in their case. Further, the post-conviction court opined that the comment may have even been helpful for the defense, giving credence to the defense theory that the girls were tired or asleep and they ran the red

light. The state court did not find counsel deficient for failing to object and "certainly" did not believe that objecting to the comment would have changed the outcome. In the absence of any showing by the Petitioner that this ruling was unreasonable, this Court agrees.

**Ground Eight**

Petitioner claims that he was denied effective assistance of counsel since his attorney "represent[ed] Stires while under a conflict of interest and while misrepresenting the scope of his relationship with the family of one of the victims" (Dkt. #1). For the reasons discussed in Ground Five, this issue was exhausted before the state courts as it appears in the proposed *pro se* supplemental brief and was one of the grounds Petitioner alleges his appellate counsel was ineffective for failing to raise.

The post-conviction court described this claim as "totally without merit and a complete 'red herring'" (Dkt. #20, Vol. III, Ex. J at 294). The standard which must be reached for a conflict of interest to violate the Sixth Amendment rights of a defendant is that the Petitioner must "establish that an actual conflict of interest adversely affected his lawyer's performance." *Culyer v. Sullivan*, 446 U.S. 335, 350 (1980). The Eleventh Circuit "has stated that a conflict-of-interest claimant cannot prevail unless he 'can point to specific instances in the record to suggest an actual conflict or impairment of [his] interests.'" *Owen v. Sec'y for Dep't of Corr.*, 568 F.3d 894, 913 (11th Cir. 2009)(quoting *Smith v. White*, 815 F.2d 1401, 1404 (11th Cir.1987)).

This arises because defense counsel allegedly knew the father of one of the victims, a Mr. Druzbick, who was a member of the Hernando County School Board and well known

in the community. Counsel's wife apparently knew him in his official capacity since she was a school teacher. Additionally, counsel's wife may have taught one of the victims in fifth grade. Counsel denied having social connections to the families of any of the victims or being a member of the same church as Mr. Druzbick. Further, counsel testified that he informed the Petitioner of these issues and the Petitioner accepted his continued representation.

Further, the state court found nothing in the record to suggest that counsel was "less than zealous in his representation" and that neither prong of the *Strickland* test was or could be met on these grounds. Since Petitioner does not provide evidence to the court of an "actual conflict of interest adversely affect[ing] his lawyer's performance" as *Culyer*, 446 U.S. at 350, demands or cite to evidence in the record of an "actual conflict or impairment of [his] interests," *Owen*, 568 F.3d at 913, he is not entitled to relief on the claim presented in Ground Eight.

**Ground Nine**

Petitioner asserts that he was denied effective assistance of counsel when his trial attorney "fail[ed] to file a motion to suppress Stires' audiotaped statement to law enforcement" (Dkt. #1). For the reasons discussed in Ground Five, this issue was exhausted before the state courts as it appears in the proposed *pro se* supplemental brief and was one of the grounds Petitioner alleges his appellate counsel was ineffective for failing to raise.

Petitioner argues that, had his counsel suppressed the statement, the jurors would not have heard his slurred speech and associated it with intoxication rather than his head injuries.

He alleges that the statement was inappropriate since it was taken at the hospital while the petitioner was being treated for his injuries and was "under a diminished capacity."

In considering this issue, the state post-conviction court noted that under Florida law a good faith basis is required for moving to suppress a statement. The court noted that (as discussed above) the defense counsel took depositions of witnesses at the hospital, conducted discovery surrounding the events at the hospital, and deposed the troopers involved in the case. Thus, the court concluded that no suppression motion was filed because apparently the defense team did not believe they could meet the burden to suppress. Further, the trial transcript does not indicate that defense counsel was unaware of the audiotape as Petitioner suggests, but rather that he knew of its existence but had yet to hear it (Dkt. #20, Vol. I, Ex. A at 579).

Additionally, by allowing the statement into evidence the defense was able to get across the Petitioner's side of the story without having to subject the Petitioner to cross-examination or call additional witnesses and forfeit the double closing argument, an underlying strategy throughout the trial as has been discussed *supra*.

As the Petitioner himself denies being impaired by drugs or alcohol at the time of the statement and there is no evidence whatsoever put forth to substantiate the claimed coercion, it appears that there were no grounds upon which to suppress the statement. As such, there is no basis to find the state court's decision that neither prong of the *Strickland* test had been met to be unreasonable. The petitioner is not entitled to relief on the claim put forth in Ground Nine.

**Ground Ten**

Petitioner challenges that his trial counsel was ineffective "for failing to challenge the results of the blood alcohol test" (Dkt. #1). For the reasons discussed in Ground Five, this issue was exhausted before the state courts as it appears in the proposed *pro se* supplemental brief and was one of the grounds Petitioner alleges his appellate counsel was ineffective for failing to raise.

Petitioner alleges that his lawyer should have challenged the blood alcohol test results as being unreliable since proper handling procedures were not followed. The post-conviction court found that the blood sample taken from the Petitioner was placed in a "gray stopper tube" from the hospital which was approved by the Florida Highway Patrol, but was then stored in an FHP evidence locker and transported to the lab in the trunk of a patrol car for a total of approximately 9 days that the blood was not refrigerated. In questioning at the evidentiary hearing for the Rule 3.850 motion the defense's expert, Dr. Chronister, testified that when a gray stopper tube is used, refrigeration is not critical to preserve the blood sample over such a short period of time. Further, in the "infinitesimally small" number of samples where the result would have changed, it would have been a change in favor of the petitioner because alcohol would evaporate from the blood. The expert also testified that the evidence of the number of beers the Petitioner drank and the time period in which he consumed them would give a blood alcohol level around or higher than what testing indicated in the Petitioner  (Dkt. #20, Vol. III, Ex. J at 297).

The state court found that in light of Dr. Chronister's testimony at the evidentiary hearing, it was perfectly reasonable for the defense to decide against calling him to challenge the blood sample or presenting evidence regarding the validity of the sample. Further, the expert's testimony indicates that the decision did not prejudice the Petitioner. The state court determined that neither prong of the *Strickland* test had been met regarding this issue. The Petitioner has not presented evidence to show that this ruling by the state court was based on an unreasonable finding of fact or that the law applied by the state court was contrary to federal law or an unreasonable application of the federal law. Accordingly, the Petitioner is not entitled to relief on the claim presented in Ground Ten.

**Ground Eleven**

Petitioner asserts that the cumulative effect of his counsel's deficient performance as set out in Grounds One through Ten denied him effective assistance of counsel. For the reasons discussed in Ground Five, this issue was exhausted before the state courts as it appears in the proposed *pro se* supplemental brief and was one of the grounds Petitioner alleges his appellate counsel was ineffective for failing to raise.

Petitioner claims that the cumulative effect of the alleged defects in his counsel's performance raised in Grounds One through Ten denied him the effective assistance of counsel and thus a fair trial. The state post-conviction court found that Petitioner's counsel was presented with a case with difficult background facts and throughout the trial followed the strategy of keeping the defense case simple and focusing on the central issue of causation of the accident. To do so, they avoided extraneous issues which would require the calling of

witnesses and cost them the coveted opportunity to have opening and rebuttal closing arguments in which to feature the causation issue (Dkt. #20, Vol. III, Ex. J at 297).

Having not found any of the individual grounds to deprive the Petitioner of effective assistance of counsel and in the absence of evidence of the unreasonableness of the state court's determination that this was central trial strategy of the defense team rather than a cumulative deficient performance, the Petitioner is not entitled to relief on the claims put forth in Ground Eleven.

**Ground Twelve**

Petitioner urges that he was denied the effective assistance of appellate counsel when his counsel on direct appeal "fail[ed] to raise an issue that the assistant state attorney knowingly allowed false testimony of a key witness for the state to go uncorrected" (Dkt. #1). The petitioner here refers to the testimony of Carl Benson at trial that he had not been drinking on the night that he witnessed the accident and that he never told Trooper Parnell that he had a few drinks.

The underlying issue of the alleged *Giglio* violation has been procedurally defaulted as it was not raised in the state courts where it was properly at issue. "A petitioner in Florida is not entitled to collateral relief 'based upon grounds which could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence.'" *Tejada v. Dugger*, 941 F.2d 1551, 1556 (11th Cir. 1991)(quoting Fla.R.Crim.P. 3.850). Petitioner should have raised this issue at trial which would have preserved the objection to be considered on direct appeal. In *Tejada*, a case with an alleged *Giglio* violation arising

from an exchange much like the one at issue in this claim (where the testimony of a state witness at trial was different than that which the prosecutor allegedly should have known was given in a statement to the police), the Eleventh Circuit held that where "the defendant knew of [the witness's] earlier inconsistent sworn statements and could have objected when the prosecutor elicited [the witness's] testimony is sufficient to determine that [Petitioner] procedurally defaulted this claim by failing to raise the issue at trial." *Id.*

Since Petitioner's claim is procedurally defaulted, he may raise it before this court only if he "can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998)(citations omitted). Petitioner presents nothing to the Court to suggest that he is 'actually innocent,' so in order to proceed with this claim he must be able to make the showing of cause and prejudice. "To show cause, a defendant must prove that 'some objective factor external to the defense impeded counsel's efforts' to raise the claim previously." *Lynn v. United States*, 365 F.3d 1225, 1235 (11th Cir. 2004)(quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

Petitioner asserts that the ineffective assistance of counsel in his direct appeal was the 'cause' for his procedural default, but his ineffective assistance claim in this case will not meet the 'cause' requirement as his counsel was not obligated to raise an issue which was not preserved for appeal. "Ineffective assistance of counsel may satisfy the cause exception to a procedural bar. In order to do so, however, the claim of ineffective assistance must have merit." *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000)(citation omitted), *see also Rutherford v. Moore*, 774 So.2d 637,643 (Fla. 2000)(holding that in Florida state courts

"appellate counsel cannot be considered ineffective for failing to raise issues which [were] procedurally barred ... because they were not properly raised at trial"(citation omitted)). Even were cause present, the Petitioner was not prejudiced by the failure to object at trial. This is much like the failure to impeach the credibility of Mr. Benson raised in Ground One where in applying the *Strickland* test the state post-conviction court, after considering the role Mr. Benson's testimony played in the trial, found it to be "impossible as a matter of law for the Court to find that such a failure provided a reasonable probability that the jury outcome would have been different" (Dkt. #20, Vol. III, Ex. J at 288).

Even were this claim to surpass the hurdle of procedural default, it would fail. In analyzing the analogous situation in *Tejada* the Eleventh Circuit was:

> "unconvinced that the use of [the witness's] testimony was false in the *Giglio* sense. Unlike in *Giglio*, where the government failed to disclose a promise made to a key witness and then depended almost entirely on that key witness' testimony, in the instant case [Petitioner] was fully aware at trial of the already conflicting sworn statement ... and of the inconsistency between [the witness's] testimony and his earlier statements."

*Tejada v. Dugger*, 941 F.2d at 1557.

Further, Petitioner urges in his state habeas petition where the details of this claim are laid out (Dkt. #20, Vol. IV., Ex. T)  that the prosecution was alerted that Mr. Benson's statements conflicted during a side-bar conference. This side-bar conference did not occur during the questioning of Mr. Benson, at which time defense counsel remained silent, but rather only during the cross-examination of Trooper Parnell when the prosecution anticipatorily objected to a line of questioning regarding Mr. Benson's statements to him. The

defense voluntarily withdrew the question and decided not to pursue that line. The defense did not object to the prosecutors questioning of Mr. Benson and, as discussed in Ground One, decided not to pursue the issue on their own during questioning of either Mr. Benson or Trooper Parnell. Appellate counsel could not be found ineffective for failure to appeal the alleged *Giglio* violation when it had not been preserved, and, as the claim was procedurally defaulted without cause and prejudice, the Petitioner is not entitled to relief on the claim in Ground Twelve.

**Ground Thirteen**

Petitioner urges that his appellate counsel was ineffective for failing to file a motion to correct his sentence as illegal under *Apprendi*. This claim was brought before the state court on the Petitioner's state habeas corpus petition.

The issue raised in Ground Thirteen is moot. Petitioner complains that his counsel should have raised the illegal sentencing on direct appeal, but had she done so, the only available remedy would be a re-sentencing as to Count II of his indictment. This remedy has already occurred as a result of the Petitioner's Rule 3.850 hearings and *pro se* motion to correct his sentence (Dkt. #20, Vol. III, Ex. S). As the Petitioner has now been re-sentenced in accord with the controlling law of *Apprendi*, the Petitioner is not prejudiced by appellate counsel's failure to raise the issue regardless of whether or not it constituted deficient performance.

Because the sentence has already been corrected there is no further remedy available to the Petitioner on the claim raised in Ground Thirteen.

**Ground Fourteen**

Petitioner claims that his appellate counsel on direct appeal was ineffective "for failing to seek discretionary review by the Florida Supreme Court and for failing to inform [Petitioner] about her decision ... until after it was too late for him to do so *pro se*" (Dkt. #1). This ground was presented to the state court in Petitioner's state habeas corpus petition.

Petitioner asserts that discretionary review would have been available to him because of an alleged conflict with previous Florida appellate and Florida Supreme Court cases. Article Five, Section Three of the Florida Constitution establishes the jurisdiction of the Florida Supreme Court at heading (b), and subheading (3) is the relevant portion to this case, stating in part the court may review an appellate court decision "that expressly and directly conflicts with a decision of another district court of appeal or of the supreme court on the same question of law."

Petitioner fails to recognize, however, that it is irrelevant to this ground whether or not an express and direct conflict exists in Petitioner's case which would put it in a class where the Florida Supreme Court could, at its discretion, accept the case. The United States Supreme Court has held that "a criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals or applications for review in [the United States Supreme Court]." *Wainwright v. Torna*, 455 U.S. 586, 587 (1982)(citing *Ross v. Moffitt*, 417 U.S. 600 (1974), *see also Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)(stating "[T]he right to appointed counsel extends to the first appeal of right, and no further. Thus, we have rejected suggestions that we establish a right to counsel on discretionary appeals."). Since Petitioner

readily admits that review by the Florida Supreme Court would be discretionary review, he has no federal constitutional right to counsel to pursue that review. "Since [Petitioner] had no constitutional right to counsel, he could not be deprived of the effective assistance of counsel by his retained counsel's failure to file the application timely." *Torna*, *supra*, 455 U.S. at 587-88.

While *Torna* dealt with a retained counsel, its holding is equally applicable to appointed counsel since a Petitioner cannot claim ineffective assistance in proceedings where there is no constitutional right to an attorney. *Coleman v. Thompson*, 501 U.S. 722, 725 (1991). As such, Petitioner "was not denied due process of law by the fact that counsel deprived him of his right to petition the Florida Supreme Court for review." *Torna*, *supra*, 455 U.S. at 588. The Petitioner is not entitled to relief on the claim put forth in Ground Fourteen.

**Ground Fifteen**

Petitioner alleges that he was denied the effective assistance of appellate counsel on the appeal of his post-conviction motions since his counsel "fail[ed] to raise meritorious issues" (Dkt. #1). This claim was put before the state court in Petitioner's state motion for habeas corpus relief and as such is exhausted.

Petitioner does not state a ground under which relief could be granted by this Court. Section 2254 explicitly bars this claim as a ground for relief. "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). Additionally, the Supreme Court has ruled that constitutionally ineffective counsel in state

post-conviction proceedings is not a habeas claim which can entitle a Petitioner to relief. "There is no constitutional right to an attorney in state post-conviction proceedings. Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Coleman v. Thompson*, 501 U.S. 722, 752 (1991)(citations omitted).

Because this claim is explicitly disallowed by Section 2254, this Court's inquiry into this issue need go no further. The Petitioner is not entitled to relief on the claim in Ground Fifteen.

**Ground Sixteen**

Petitioner alleges that he was denied effective assistance of appellate counsel on appeal from the denial of post-conviction relief when his attorney "fail[ed] to file a motion for rehearing" or to inform him of the decision in time for him to file *pro se*.

This claim, like Ground Fifteen, does not present a ground upon which this Court can grant relief. Section 2254(i) specifically bars this type of claim. "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). As such, this Court need not address this claim further. The Petitioner is not entitled to relief on the claim presented in Ground Sixteen.

**Ground Seventeen**

Petitioner asserts that "[t]he trial court erred by allowing the state's blood alcohol toxicologist to testify at trial about the effects one might expect the alcohol level he detected in Stires' blood would have on the average person, thus effectively affording the State a

statutory presumption of impairment" (Dkt. #1). The state urges that this ground was only raised on direct appeal in terms of state law claims and as such has been procedurally defaulted. This basis was laid out by the Supreme Court in *Duncan v. Henry* as: "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995).

Petitioner admits that his claim has been procedurally defaulted for failing to raise the federal constitutional issues, but argues that he can demonstrate both cause and prejudice such that this Court should still hear the claim. Petitioner urges that the "cause" of his failure to raise this claim was the ineffective assistance of his appellate counsel on direct appeal where he was constitutionally guaranteed assistance of counsel. He claims that his appellate counsel was ineffective for failing to raise this in terms of the federal issue. Petitioner neglects to note, however, that "[a]n ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted." *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In order to preserve his claim of ineffective assistance of appellate counsel such that it could serve as cause to excuse the procedural default of his present claim, Petitioner must have presented the ineffective assistance of counsel claim now offered as cause to the state courts. Petitioner does not claim to have done so, and a review of the Petitioner's state habeas corpus petition finds no evidence of this claim being presented to the state court.

The ineffective assistance which petitioner puts forth as cause has itself been procedurally defaulted and the cause prong of cause and prejudice cannot be satisfied. Since this Court concludes that Petitioner lacked cause for his default, it need not consider whether he also suffered actual prejudice. *Engle v. Isaac*, 456 U.S. 107, 134 (1982).

Even if this claim were not procedurally defaulted, this Court "do[es] not sit to review state court action on questions of the propriety of the trial judge's action in the admission of evidence." *Lisenba v. People of State of California*, 314 U.S. 219, 228 (1941). A federal habeas court does not sit as an appellate court to review evidentiary rulings made under state law. A state law claim that an evidentiary ruling was incorrect does not give rise to a basis for federal habeas review. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). Petitioner is not entitled to relief on the claim put forth in Ground Seventeen.

**Ground Eighteen**

Petitioner argues that trial court error denied him due process when the court "erred by instructing the jury that Stires could be found guilty of DUI manslaughter if he 'caused or contributed to the cause of the decedents' deaths'" and "erred by failing to sustain Stires' objection to the State's closing argument that jurors must find Stires 'blameless' in order to acquit him of DUI manslaughter" (Dkt. #1). Stires contends that these errors impermissibly lowered the burden of proof needed for the state to convict.

The state urges that these issues were procedurally defaulted by virtue of having only been raised in the state courts as state law claims, but a review of the briefings filed before the state appellate court reveals that the alleged infractions were claimed to violate the

Petitioner's right to due process of law under the Fifth and Fourteenth Amendments to the United States Constitution as well as the claims under the Florida Constitution. For organizational purposes, the allegedly improper jury instruction and the alleged burden shifting by the prosecutor will be addressed separately.

Appropriateness of the Jury Instruction

The Court first addresses the issue of whether the standard jury instruction misstates Florida law such that it impermissibly shifts the burden of proof and violates the Petitioner's due process rights. The essential issue is that the jury instruction reads "caused or contributed to the cause of the death" while the statute mentions only cause. Underlying this claim is the proposition that the Florida Supreme Court has misinterpreted the Florida statute regarding DUI manslaughter. While the question of whether the standard jury instruction accurately states the statutory law in Florida regarding causation has been a much litigated claim, the Florida Supreme Court has spoken on the issue in the case of *State v. Van Hubbard*, 751 So.2d 552 (Fla. 1999) and determined that their standard jury instruction is a correct statement of the law based upon the interpretation of the statute in *Magaw v. State*, 537 So.2d 564 (Fla. 1989) such that no negligence principles should be imputed.

As to whether the jury instructions accurately state Florida law, a federal habeas corpus court cannot grant relief. "A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." *Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983). Petitioner's claim is purely one of state law - whether the standard jury instructions on DUI manslaughter which have

been approved by the Florida Supreme Court accurately state the law of Florida. "Questions of pure state law do not raise issues of constitutional dimension for federal habeas corpus purposes." *Id*. at 1054-55. As such, Ground Eighteen as it relates to the jury instruction does not entitle the Petitioner to federal habeas corpus relief.

Harmless Error Inquiry into Prosecutor's Statement

The next portion of the claim deals with the prosecutor's comment during closing arguments that the jury must find the Petitioner "blameless" in order to acquit him. The state appellate court ruled that the statement was improper and analyzed that, "[a]rguments that shift or lessen the burden of proof are improper. The words, 'you have to find him totally blameless,' improperly shift the burden of proof because a jury does not have to 'find' a defendant innocent or 'blameless' to acquit; he is presumed innocent." *Stires v. State*, 824 So.2d 943, 946 (Fla. 5th Dist. Ct. App. 2002). After determining that the prosecutor's statement was improper, the appellate court subjected the error to harmless error review.

Before reaching this issue this Court must first clarify what standard of review is appropriate in reviewing state court decisions regarding whether or not a constitutional error in trial constituted "harmless error."

The appropriate test to be applied by a state court in determining whether a federal constitutional error can be held harmless is that "the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1967). The Supreme Court, prior to the passage of AEDPA, held that the standard to be used on this issue in collateral federal habeas review of a state court criminal judgment was not the

"beyond a reasonable doubt" standard of *Chapman*, but rather whether the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993). The Court based this determination on concerns about finality, comity, and federalism.

There was some confusion amongst the courts regarding what standard was appropriate to apply to questions of harmless error in Section 2254 cases following the passage of the AEDPA in 1996. This was due to AEDPA's amendment to Section 2254 stating that federal habeas review could only be granted in cases where the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1).

The Supreme Court spoke on this issue in 2003 when, in the course of addressing a question of harmless error, the Court held that "a federal court may grant a state habeas petitioner relief for a claim that was adjudicated on the merits in state court only if that adjudication 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Mitchell v. Esparza*, 540 U.S. 12, 15 (2003)(quoting 28 U.S.C. § 2254(d)(1)). The Court then continued that the "clearly established federal law" to be applied by the state courts in this inquiry was that "[a] constitutional error is harmless when 'it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Id.* at 17-18(citations omitted).

The Supreme Court again addressed the issue of the appropriate standard for federal collateral review of harmless error in a state court judgment post-AEDPA in 2007, this time in the context where "the state appellate court failed to recognize the error and did not review it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman*." *Fry v. Pliler*, 551 U.S. 112, 114 (2007). In *Fry*, the Court rejected the petitioner's suggestion and held that §2254(d)(1) as it was interpreted in *Esparza* did not "eliminate the requirement that a petitioner also satisfy *Brecht's* standard." *Id.* at 119. The Court found that §2254(d) "sets forth a precondition to the grant of habeas relief ... not an entitlement to it" and that it was implausible that the AEDPA, which served to limit the availability of federal habeas corpus relief, would have replaced the stricter *Brecht* standard with the more liberal *Chapman* standard as the relevant test without explicitly saying so. *Id.* at 119-20. *Fry*, 518 U.S. at 121-22, answered the question of what test to apply when the state court fails to conduct a *Chapman* inquiry by holding that a federal court

> "must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht*, 507 U.S. 619, whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman*, 386 U.S. 18."

Post-*Fry* the initial inquiry remains the AEDPA question of unreasonable application of *Chapman* which serves as a precondition to federal habeas relief. *Mitchell v. Esparza*, 540 U.S. 12 (2003). If the state court's application of harmless error review was not contrary to or an unreasonable application of the *Chapman* test, then §2254(d)(1) dictates that habeas

relief may not be granted. If, however, the state appellate court did not conduct a *Chapman* harmless error inquiry, or if it did so unreasonably, then this Court must evaluate the constitutional error. When this Court must itself assess the prejudicial impact of a constitutional error, *Fry* commands that it do so under the *Brecht* standard and a writ may only issue if the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht, supra*, 507 U.S. at 631.

This Court's review of the harmless error issue begins with the threshold inquiry of whether the state court reached a decision which was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1), *see also Mitchell v. Esparza*, 540 U.S. 12, 15 (2003). The state appellate court opinion in the instant case appears at *Stires v. State*, 824 So.2d 943 (Fla. 5th Dist. Ct. App. 2002). The state court conducted its harmless error analysis under a standard where "the state must prove beyond a reasonable doubt that the error complained of did not contribute to the verdict, or, stated alternatively, that there is no reasonable possibility that the error contributed to the conviction." *Stires*, 824 So.2d at 946. This is an application of the *Chapman* harmless error test, the appropriate federal law for state courts conducting harmless error reviews of federal constitutional violations. While the state court cited to a Florida Supreme Court case adopting harmless error review rather than to *Chapman*, this does not mean that they applied law contrary to federal law. The United States Supreme Court has held that "[a] state court's decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions." *Mitchell v.*

*Esparza*, 540 U.S. at 16 (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)).

In applying the *Chapman* test the state court examined the evidence which was presented at trial, noting the physical evidence of the crash, it's interpretation by crash investigators, the testimony concerning the operation of the traffic signal by the county traffic supervisor, and the eyewitness testimony of Mr. Benson supporting the prosecution on the central issue in the case of whether the Petitioner caused the accident by running the red light. This was contradicted only by the statements of the Petitioner who had an obvious self interest in the case and a blood alcohol level twice the legal limit at the time the statement was taken. "It was the jury's prerogative to believe, based on the testimony and physical evidence presented, that Stires ran the red light." *Stires, supra,* 824 So.2d at 947.

The impermissible statement was the prosecutor's statement that "[I]n any part if he assisted in that cause, he's guilty. You have to find him totally blameless, a non-contributor." (Dkt. #20, Vol. II, Ex. A at 852). This statement drew an objection and side-bar conference, after which the judge issued a curative instruction to the jury that their instructions on the law were to come from the judge and that the arguments of the attorneys did not constitute instructions on the law. The prosecutor than restarted his closing arguments by stating that the prosecution had the burden of proving causation beyond a reasonable doubt. Following this intensive review of the record, the state appellate court concluded that "[t]he judge's curative instruction, combined with the prosecutor's acknowledgment of the burden of proof, removed any possibility that the jury may have misinterpreted the prior statement to mean that Stires had the burden of proof. Accordingly, we conclude the error was harmless." *Stires, supra,* 824

So.2d at 948.

This Court "may not grant respondent's habeas petition ... if the state court simply erred in concluding that the State's errors were harmless; rather, habeas relief is appropriate only if the [state appellate court] applied harmless-error review in an 'objectively unreasonable'" manner. *Mitchell v. Esparza*, 540 U.S. 12, 18 (2003)(citing *Lockyer v. Andrade*, 538 U.S. 63, 75-77 (2003)). Without offering an opinion on the correctness of the state appellate court's harmless error determination, this Court finds nothing objectively unreasonable with the Florida Fifth District Court of Appeals' application of the *Chapman* harmless-error standard or the conclusion it reached. As such, habeas corpus relief cannot be granted for this claim under §2254(d)(1).

Were this claim to have surmounted the threshold hurdle of §2254(d)(1), it also would have failed upon this Court's application of the *Brecht* test. When this Court asks whether the error of the prosecutor's improper statement "had substantial and injurious effect or influence in determining the jury's verdict" *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993), the Court would be unable to conclude that it did. The curative instruction given by the judge, the prosecutor's clarification that the state had to prove the case beyond a reasonable doubt, and the isolated nature of the remark all support the determination that the prosecutor's comment did not have substantial and injurious influence in determining the jury's verdict. Beyond these elements discussed by the state court it has gone unmentioned that the defense team had a rebuttal closing argument in which the defense could, and in fact did, speak to the correct burden of proof. In this rebuttal argument defense counsel stated:

> "But you cannot, as the state I believe wishes, you cannot change the burden of proof in this case, the elements of the crime to read as follows. You cannot change them to say he drove, that he was under the influence of an alcoholic beverage, or had a blood alcohol level over .08, and somebody died. That's not the standard. The standard is caused or contributed to." (Dkt. #20, Vol. II, Ex. A at 882).

In light of the weight of the properly admitted evidence, the isolated nature of the inappropriate remark, the curative instruction given by the judge, the prosecutor's clarification of the correct burden of proof, and defense counsel's rebuttal to the comment and clarification of the elements and burden, the record of the Petitioner's state trial cannot support a conclusion that the prosecutor's improper remark had a substantial and injurious effect or influence in determining the jury's verdict. As such, this Court would, upon collateral review, find that the error complained of was harmless when the *Brecht* standard was applied.

Based upon the Court's determination that neither of the claims advanced in Ground Eighteen could support federal habeas corpus relief, the Petitioner is not entitled to relief on the claims stated in Ground Eighteen.

**Ground Nineteen**

Petitioner again asserts a claim related to his illegal sentencing in Ground Nineteen. Similar to the related claim in Ground Thirteen, relief cannot be granted to the Petitioner on the claims put forth in Ground Nineteen as no further remedy is available to him. The illegal sentences complained of have previously been remedied in the state court system through a re-sentencing of the Petitioner in accord with the law of *Apprendi*. As such, the Petitioner is not entitled to relief on the claim put forth in Ground Nineteen.

## <u>CONCLUSION</u>

For the reasons discussed above Petitioner has failed to establish that he is entitled to a writ of habeas corpus relief under 28 U.S.C. §2254.

It is therefore ORDERED AND ADJUDGED that:

1.      The petition for writ of habeas corpus (Dkt. #1) is DENIED.

2.      The Clerk is directed to enter judgment in favor of Respondents and against the Petitioner, terminate any pending motions, and close this file.

**DONE** and **ORDERED** in Tampa, Florida on August 3, 2009.


JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE


<u>**Copies Furnished To**</u>:
Counsel/Parties of Record

*F:\Docs\2007\07-cv-1689.deny 2254.wpd*